# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PIMENTEL & SONS GUITAR MAKERS, INC.,
a New Mexico corporation,

       Plaintiff,

vs.                                                                No. CIV-04-0360 JB/RLP

HECTOR PIMENTEL, an individual,
DANETTE I.L. HINKLE PIMENTEL,
an individual, and DANETTE I. LOVATO-
PIMENTEL MUSIC ENTERPRISES, INC.,
a New Mexico corporation,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Preliminary Injunction,

filed November 1, 2004 (Doc. 25). The Court held an evidentiary hearing on this motion on

December 15, 2004, January 21, 2005 and January 26, 2005. The primary issue is whether the Court

should enjoin Defendants Hector Pimentel, Danette I. L. Hinkle Pimentel, and Danette I. Lovato -

Pimentel Music Enterprises, Inc. (the "Defendants") from using Plaintiff Pimentel and Sons Guitar

Makers, Inc.'s ("Pimentel Guitar Makers") trademarks. Because the Court finds, by clear and

unequivocal evidence, that Pimentel Guitar Makers is likely to succeed on the merits, that Pimentel

Guitar Makers will suffer irreparable harm if the Court does not grant the preliminary injunction, that

the harm to Pimentel Guitar Makers outweighs whatever damage the proposed injunction would

cause the Defendants, and that the preliminary injunction will not disserve the public interest, and for

the reasons stated at the January 26, 2005 hearing, and consistent with those reasons, the Court will

grant the motion in part and deny the motion in part.

## FACTUAL BACKGROUND

For purposes of this motion, the Court finds the following:

1. **Family Background.**

Lorenzo Pimentel began making guitars between 1945 and 1956.  In 1963 he and his wife

Josefina Pimentel moved to Albuquerque, New Mexico and established Pimentel Guitars.  See

Affidavit of Lorenzo Pimentel ¶ 2, at 1 (executed October 27, 2004) (hereinafter "Lorenzo Pimentel

Aff."); Transcript of Hearing at 55:11-18 (December 15, 2004 a.m. session)(Lorenzo Pimentel).[1]

Now known as Pimentel & Sons Guitar Makers, Inc., the Pimentels, along with several of their sons,

own and operate this family business, producing and selling handcrafted instruments.  See Lorenzo

Pimentel Aff. ¶ 2, at 1; Affidavit of Roberto Pimentel ¶ 1, at 1 (executed October 28, 2004)

(hereinafter "Roberto Pimentel Aff."); Affidavit Ricardo Pimentel, ¶ 1, at 1 (executed October 27,

2004) (hereinafter "Ricardo Pimentel Aff."); Transcript of Hearing at 91:4-17 (December 15, 2004,

p.m. session)(Rick Pimentel).  Pimentel Guitar Makers owns the federally registered trademark

"PIMENTEL," Registration No. 1,623,560, having a date of first use of 1963.  See Trademark

Service Mark Principal Register, U.S. Patent and Trademark Office, Reg. No. 1,623,560 (registered

November 20, 1990).

Defendant Hector Pimentel is one of eleven children of Lorenzo and Josefina Pimentel.

Hector Pimentel is a professional guitarist and guitar instructor.  See Affidavit of Hector Pimentel

Aff. ¶¶ 1, 4, at 1-2 (executed November 17, 2004)(hereinafter "Hector Pimentel Aff."); Transcript

of Hearing at 87:14-88:25 (January 21, 2005)(Hector Pimentel).  Pimentel Guitar Makers previously

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

sued Hector for trademark infringement, and this Court - - Through the Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico - -  issued a permanent injunction whereby Hector was subject to certain restrictions in using the "Pimentel" name.  <u>See</u> Order and Judgment, <u>Lorenzo Pimentel and Sons Limited Partnership v. Hector Pimentel Guitar Center, Inc.</u>, No. CV 88-582, filed September 26, 1989 (Doc. 22) ("Pimentel Order and Judgment").

2.    <b><u>The 1989 Injunction.</u></b>

In 1988, Lorenzo Pimentel & Sons Limited Partnership filed a complaint against Hector Pimentel individually, Hector Pimentel Guitar Center, Inc., and Hector Pimentel Guitar Center, a New Mexico general partnership, for use of the business name, tradename and trademark "PIMENTEL." Roberto Pimentel Aff. ¶ 3, at 2; Ricardo Pimentel Aff. ¶ 2, at 2.  In 1989, the parties to that lawsuit entered into a settlement.  The parties in that submitted a joint motion for entry of order to the Court, which the Court granted and, which resulted in an injunctive Order and Judgment that Judge Burciaga entered on September 26, 1989.  <u>See</u> Pimentel Order and Judgment.  Pimentel Guitar Makers is the successor of Lorenzo Pimentel & Sons Limited Partnership, the party named in the 1989 Injunction, and thus is rightfully before the Court as the party requesting the Court to issue a preliminary injunction based on a finding that there was a violation of the 1989 Injunction. <u>See</u> Roberto Pimentel Aff. ¶ 1, at 1; Ricardo Pimentel Aff. ¶ 1, at 1; Transcript of Hearing at 94:3-6 (January 21, 2005)(Hector Pimentel).

The 1989 Order and Judgment provides:

1.  The defendants may conduct business under a name, d/b/a, trademark or tradename that contains the word 'Pimentel'; they are, however, permanently restrained and enjoined from including in any such name, d/b/a, trademark or tradename the word 'guitar' or 'luthier' or any other word or words suggestive of the making or selling of guitars.

-3-

2.  The defendants are further enjoined in the event they or any of them elect to use the word "Pimentel" in the manner set forth above, to print a disclaimer of association with the plaintiff on every form, letterhead, advertisement, and any other written or printed document bearing the business name, d/b/a, trademark or tradename of the defendants.  The disclaimer shall be printed in type no smaller then 8 point type . . . and it shall legibly state '[insert name of defendant's business] is not now nor has it ever been affiliated with Pimentel and Sons, Guitar Makers.'

3.  Defendant Hector Pimentel may place his name or his likeness or both on labels to be affixed to any guitar held out by the defendants for sale, rental, or temporary use.  Any such label shall contain the disclaimer required by paragraph 2 of this Order and Judgment, and shall legibly identify the maker of the guitar.

* * * *

5.  In the event that the defendants elect to use the word "Pimentel" in the name of a business, as permitted by paragraph 1 of this Order and Judgment, there shall be placed a sign in every place of business at which any of the defendants do business stating: 'We are not affiliated in any way with Pimentel and Sons, Guitar Makers.'  The sign shall be conspicuously placed so that customers will be advised of the absence of any business association between the parties.

Id. at ¶¶ 1-3, 5 at 1-2.

After Judge Burciaga issued the 1989 Injunction, Pimentel Guitar Makers allowed Hector Pimentel to teach guitar lessons at its studio, from 1991 to 2004.  See Ricardo Pimentel Aff. ¶¶ 2, 5, 6 at 2-3.  Pimentel Guitar Makers allowed Hector Pimentel,  and other individuals providing lessons at their studio, to use the Pimentel name for the limited purpose of furthering Pimentel & Sons' business interests in providing guitar lessons and selling guitars.  See id.; Transcript of Hearing at 59:4-22 (December 15, 2005, p.m.)(Lorenzo Pimentel).

### 3.   Hector Pimentel and Danette Infania Lovato-Pimentel's Use of The Name Pimentel.

Since approximately 1994, Danette Pimentel has worked with Hector Pimentel to promote and sell his goods and entertainment services.  See Transcript of Hearing at 162:14-163:4 (January

-4-

21, 2005)(Danette Pimentel); Hector Pimentel Aff. ¶ 3, at 1; Affidavit of Danette I. Lovato-Pimentel ¶ 2, at 1, executed November 17, 2004 (hereinafter "Danette Pimentel Aff.").  Hector Pimentel married Danette Lovato on April 2, 1995.  See Marital Settlement Agreement ¶ D, at 2 (executed July 31, 2003).  Hector Pimentel and Danette Pimentel permanently separated on December 7, 2002. See id. ¶ E, at 2.  They were divorced July 31, 2003.  See id. at 13.

The Defendants used several marks to promote Hector Pimentel's goods and services: (i) PIMENTEL MUSIC; (ii) HECTOR PIMENTEL MUSIC; (iii) PIMENTEL MUSIC ENTERPRISES; and (iv) HECTOR PIMENTEL MUSIC ENTERPRISES.  See Hector Pimentel Aff. ¶ 3, at 1; Danette Pimentel Aff. ¶ 2, at 1.  They received a New Mexico trademark registration for PIMENTEL MUSIC ENTERPRISES, HECTOR PIMENTEL in 1996.  See Certificate, Office of the Secretary of the State, State of New Mexico, File No. TN96030507 (dated March 5, 1996); Hector Pimentel Aff. ¶ 17, at 4.   In 2004, Pimentel Guitar Makers attempted to register the mark PIMENTEL MUSIC with the State of New Mexico; however, Secretary of State Rebecca Vigil-Giron refused Pimentel Guitar Makers state trademark registration, explaining that "the mark is confusingly similar to a trademark registration for 'Pimentel Music Enterprise, Hector Pimentel' which is presently registered in this office."  Letter from Rebecca Vigil-Giron, Secretary of State, to Dennis Armijo, Attorney for the Plaintiff (dated February 24, 2004).

Upon publication of the 2004 QwestDex yellow pages, Pimentel Guitar Makers discovered an advertisement in the yellow pages for "Pimentel Music Enterprises, Inc., Danette I. Lovato. " Roberto Pimentel Aff. ¶ 7, at 2; Ricardo Pimentel Aff. ¶ 7, at 2.  Pimentel Guitar Makers also discovered that Dannette Pimentel registered the corporation "Danette I. Lovato-Pimentel Music Enterprises, Inc." with the State of New Mexico.  Roberto Pimentel Aff. ¶ 7, at 2; Ricardo Pimentel

Aff. ¶ 7, at 2.

Hector Pimentel uses the name "Pimentel" in connection with the sale of goods and entertainment services.  See, e.g., Hector Pimentel, http://www.hectorpimentel.com web page.[2] Hector Pimentel's website does not contain the disclaimer detailed in the 1989 Order and Judgment. See id.  In approximately April 2004, Hector Pimentel advertised his business as "Pimentel Music" on a sign on Central Avenue in Albuquerque, New Mexico, near the intersection with Broadway.  See Affidavit of Jessica Herrera ¶¶ 3-4 at 2; Affidavit of Veronica Becker ¶¶ 2-3, at 1-2.  In addition, Danette I. Lovato-Pimentel Music Enterprises, Inc. conducts business on behalf of Hector Pimentel. See Transcript of Hearing at  219:1-220:10 (January 21, 2005)(Danette Pimentel).  Hector Pimentel contracts with Danette I. Lovato-Pimentel Music Enterprises, Inc. as a "musician and artist."  Id. at 221:1-4.

## PROCEDURAL BACKGROUND

Pimentel Guitar Makers filed a motion for a preliminary injunction requesting that the Court enjoin the Defendants from alleged continuing violations of the 1989 Order and Judgment, of the Federal Lanham Act, and of the New Mexico Unfair Practices Act.  Defendants Hector Pimentel, Danette I.L. Hinkle Pimentel, and Danette I. Lovato-Pimentel Music Enterprises, Inc. oppose this motion.

While the parties concentrated the three-day evidentiary hearing on whether the parties had a trademark and tradename, the Court asked Pimentel Guitar Makers' counsel during the January 26, 2005 hearing, and again at the end of the hearing, whether the Court could give it the relief it sought

---

[2] Citations to the web page reflect the web page as submitted as an exhibit and do not represent how the web page appears today.

based on a violation of the 1989 Injunction alone rather than also deciding the alleged violation of the Lanham Act, and the alleged violation of the New Mexico Unfair Practices Act.  Pimentel Guitar Makers agreed that the Court did not need to decide the trademark issues at the preliminary injunction stage.  See Transcript of Hearing 115:7-116:18; 177:8-11 (taken January 26, 2005).

## LAW ON PRELIMINARY INJUNCTIONS

Injunctive relief is considered an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal" right to have the Court grant the request.  Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)(citing Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social & Rehab. Servs., 31 F.3d 1536, 1543 (10th Cir. 1994)).  The terms of any injunction must be specific, with its scope constrained to the parties affected and the exact action to be prevented. See Fed. R. Civ. P. 65(d).  In determining whether to grant injunctive relief, courts consider the following four factors: (i) whether irreparable injury will result because of the unavailability of an adequate legal remedy; (ii) whether the threatened injury to the moving party outweighs whatever harm the proposed injunction would cause the opposing party; (iii) whether issuance of an injunction would not disserve the public interest; and (iv) whether the moving party is substantially likely to succeed on the merits.  See Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1270 (10th Cir. 1988)(citing Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980)).

The Court will not look at the validity of the 1989 Injunction.  See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1350 (Fed. Cir. 1998)(citation omitted). The Court will, instead, look at what "the [1989 agreement] means by the plain intendment of the words used therein and whether the conduct of the defendant[s] has violated its provisions."  World's Finest Chocolate, Inc. v. World Candies, Inc., 409 F. Supp. 840, 844 (N.D. Ill. 1976), aff'd, 559 F.2d

1226 (7th Cir. 1977). Additionally, although the Court is basing its holding on a violation of the 1989 Injunction, and not on the Lanham Act, the Court finds the case law on trademarks instructive and will therefore use it to help in determining the equities.

### 1.   Irreparable Injury.

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001)(citing Tri-State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989)). "[T]rademark infringement 'by its very nature' results in irreparable harm to the owner of the mark." Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d 656, 663 (10th Cir. 1987)(quoting Processed Plastic Co. v. Warren Comm., Inc., 675 F.2d 852, 858 (7th Cir. 1982)); See Packerware Corp. v. Corning Consumer Prods. Co., 895 F. Supp. 1438, 1452 (D. Kan. 1995)("Because a trademark represents intangible assets, such as reputation and goodwill, irreparable injury will be presumed upon a showing of trademark infringement."). "[I]n trademark cases, confusing similarity between the trademarks is sufficient injury to warrant the issuance of a preliminary injunction." Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d at 663 (citing Processed Plastic Co. v. Warren Comm., Inc., 675 F.2d at 858); P. Daussa Corp. v. Sutton Cosmetics, Inc., 462 F.2d 134, 136 (2nd Cir. 1972). "[A] movant who has established a likelihood of confusion is 'not required to show that it lost sales or incurred other damage.'" Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d at 663 (quoting GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984)).

There are two exceptions to the presumption of irreparable harm in trademark cases: (i) when a trademark in question is already weak; and (ii) when there is a delay in seeking the injunction. See

id. (citations omitted).  The presumption of irreparable injury is undermined when the trademark in question is already weak.  See id. 809 F.2d  at 663-64.  In Amoco Oil Co. v. Rainbow Snow, Inc., for example, the Tenth Circuit determined that the district court did not abuse its discretion when it found that plaintiff's trademark bearing a rainbow was weak when at least 35 businesses in the relevant metropolitan area used multi-colored rainbows to advertise.  See id. 809 F.2d at 663.  In that case, the district court denied the injunction, reasoning that the defendant's continued use of the trademark would have a negligible effect during the pendency of the action.  See id.  In denying injunctive relief, the Amoco Court supported its position by pointing out that the purpose of an injunction is merely "to preserve the status quo pending a final determination of the parties' rights."  Id. 809 F.2d at 664 (citing Otero Sav. & Loan Ass'n v. Fed. Reserve Bank, 665 F.2d 275 (10th Cir. 1981)).

 A second exception to the presumption of irreparable injury applies to plaintiffs who delay in seeking relief.  "Delay in seeking relief . . . undercuts any presumption that infringement alone has caused irreparable harm . . . ; therefore, such delay may justify denial of a preliminary injunction for trademark infringement."  GTE Corp. v. Williams, 731 F.2d at 678.

### 2.    Balance of Interest Between Parties.

To obtain a preliminary injunction, the plaintiff must show that the injury caused by denying the injunction would substantially outweigh the impact of granting the injunction on the Defendants.  See Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d at 1270.  Again, in light of the abbreviated facts before the court at the time, the purpose of a preliminary injunction is to maintain the status quo until a comprehensive adjudication on the merits can take place.  See Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).

3.     **Public Interest.**

"Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 197 (3rd Cir. 1990).  The Tenth Circuit has adopted six factors, originally from the Restatement of Torts § 729 (1938), as the test for determining likelihood of confusion: (i) the degree of similarity between the marks; (ii) the intent of the alleged infringer in adopting its mark; (iii) evidence of actual confusion; (iv) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (v) the degree of care likely to be exercised by purchasers; and (vi) the strengths or weaknesses of the marks.  See King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089-90 (10th Cir. 1999).  This list is not exhaustive, and certain factors weigh heavier in specific types of cases.  See Heartsprings Inc. v. Heartsprings Inc., 143 F.3d 550, 554 (10th Cir. 1998).   The factors are interrelated, and the court must consider all of them.   See id.   In cases involving either a confusion of source or a confusion of sponsorship, the similarity of the marks will weigh most heavily.  See King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d at 1090.  The degree of similarity between marks are tested in regard to sight, sound, and meaning, and "in the context of the marks as a whole as they are encountered by consumers in the marketplace." Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 925 (10th Cir. 1986).  Furthermore, "[s]imilarities are to be weighed more heavily than differences, especially when the trademarks are used on virtually identical products packaged in the same manner."  Id. 805 F.2d at 925.

4.     **Success on the Merits.**

Finally, the plaintiff has to establish that there is a substantial likelihood of success on the

merits.  See Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d at 1270.  If the Court grants

relief based on a violation of the 1989 Injunction, the Court does not need to decide the trademark

issue at this juncture, and does not need to look at the validity of the 1989 Injunction.  Cf. Additive

Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d at 1350 ("In a contempt proceeding

to enforce the injunction entered as a part of that judgment, the only available defense for anyone

bound by the injunction [i]s that the [defendant] did not infringe . . . .  Validity and infringement by

the original device [a]re not open to challenge.")(citing KSM Fastening Sys., Inc. v. H.A. Jones Co.,

776 F.2d 1522, 1529 (Fed. Cir. 1985)).  Although, Pimentel Guitar Makers did not bring a contempt

proceeding, it is making a similar request in asking this Court to enforce the 1989 Injunction.

## ANALYSIS

Since Pimentel Guitar Makers terminated the contractual relationship with Hector Pimentel,

Hector Pimentel continues to infringe upon Pimentel Guitar Makers' trademarks regularly without

adherence to the 1989 Injunction and without heed to requests from Pimentel Guitar Makers that he

cease infringing their trademarks.  The traditional four factors weigh heavily and compellingly in favor

of granting a preliminary injunction ordering the Defendants to comply with the 1989 Injunction.

## I.      THE DEFENDANTS' ACTIONS NECESSITATE A PRELIMINARY INJUNCTION.

### A.      PIMENTEL GUITAR MAKERS HAS PROVED A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS.

The Court finds that Pimentel Guitar Makers has established a substantial likelihood of

success on the merits.  Pimentel Guitar Makers may establish a substantial likelihood of success on

the merits by showing that the Defendants have individually and/or collectively violated the 1989

Injunction, and continue to do so.  The 1989 Injunction permanently enjoins the use of a name, d/b/a,

trademark or tradename that includes the word "Pimentel," when the words "guitar" or "luthier,"or

any other word or words suggestive of the making or selling of guitars are included.  Additionally,

the 1989 Injunction requires Hector Pimentel to provide a disclaimer of association when conducting

business under a name, trademark, or tradename that contains the word "Pimentel."

   The Court will not look at the validity of the underlying injunction.  See Additive Controls

& Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d at 1350.  The Court will, instead, look at what

"the [1989 agreement] means by the plain intendment of the words used therein and whether the

conduct of the defendant[s] has violated its provisions."  World's Finest Chocolate, Inc. v. World

Candies, Inc., 409 F. Supp. at 844.

   Neither party contends that the 1989 Injunction is ambiguous.  See Transcript of Hearing at

154:16-21; 103:18-20 (January 26, 2005).  Although the Defendants disagreed with Pimentel Guitar

Makers' construction of the 1989 Injunction in their brief, see Defendants' Response to Plaintiff's

Motion for Preliminary Injunction at 6, both parties to the 1989 Injunction - - Hector Pimentel and

Pimentel Guitar Makers - - agreed at the January 26, 2005 hearing as to the construction of the 1989

Injunction.  See Transcript of Hearing at 156:22-158:1 (January 26, 2005).  At the January 26, 2005

hearing, counsel for Hector Pimentel broke ranks with the other Defendants and agreed with the

Courts construction of the 1989 Injunction.  See id.  Dannette Pimentel and Danette I. Lovato -

Pimentel Music Enterprises, Inc., however, argued at that hearing that the 1989 Injunction does not

require a disclaimer any time Hector Pimentel conducts business under a name or tradename that

contains the word "Pimentel," but rather the Injunction is more limited in scope and only requires

Hector Pimentel to print a disclaimer when using the word "Pimentel" in conjunction with three

activities: (i) guitar making; (ii) guitar selling; and (iii) guitar repair. Transcript of Hearing at 132:25-

134:3.  Dannette Pimentel and Danette I. Lovato - Pimentel Music Enterprises, Inc., argued that paragraph 1 in the 1989 Injunction allows Hector Pimentel to use the word "Pimentel" as the name of a business, but enjoins Hector from using the words "guitar" or "luthier" or any other word or words suggestive of the making or selling of guitars.  Id.  Dannette Pimentel and Danette I. Lovato - Pimentel Music Enterprises, Inc., construe paragraph 1 as enjoining only the three above-mentioned activities and permitting Hector Pimentel to otherwise use the word "Pimentel" in conducting other business activities.  Id.  Dannette Pimentel and Danette I. Lovato - Pimentel Music Enterprises, Inc., then construe the reference of disclaimer in paragraph 2 of the 1989 Injunction as requiring a disclaimer only as to the three prohibited activities mentioned in paragraph 1.  See id.  Dannette Pimentel and Danette I. Lovato - Pimentel Music Enterprises, Inc., similarly construe paragraph 5's reference to disclaimer as requiring disclaimer only for the three enjoined activities mentioned in paragraph 1.  See id.

The Court comes to a different conclusion in its construction of the 1989 Injunction. Paragraph 1 allows Hector to conduct business under a trademark that includes the word "Pimentel." Paragraph 1 also permanently enjoins Hector from including in any such name the word "guitar" or "luthier."

Paragraph 2 then limits the scope of the permission in Paragraph 1 to use the word "Pimentel."  Paragraph 2 requires the defendant to print a disclaimer when using the word "Pimentel" as set forth in paragraph 1.  The Court finds that "as set forth above" refers to the clause allowing Hector to conduct business under a tradename or trademark that contains the word "Pimentel," and does not, for several reasons, refer to the specific prohibited activities found later in paragraph 1.

First, paragraph 2 starts out with the phrase "[t]he defendants are further enjoined, in the

-13-

event they or any of them elect to use the word 'Pimentel' in the manner set forth above." The only manner set forth "above" in paragraph 1 is the permissive use of the word "Pimentel" in conducting business. The permanent injunction of the use of "guitar" or "luthier" is not a "manner set forth above" allowing the use of the word "Pimentel." It would make no sense for paragraph 1 to permanently enjoin the use of "guitar" or "luthier," and then paragraph 2 to undo that permanent injunction. The clearer reading of the two paragraphs together is that "manner set forth above" is referring to the permissive use of the word "Pimentel," and not the permanent injunction of the words "guitar" and "luthier." In addition, paragraph 5 provides: "In the event the defendants elect to use the word "Pimentel" in the name of a business, as permitted by paragraph 1 . . . ." In paragraph 1, the only permissive use of the word 'Pimentel' is the permissive clause allowing Hector to conduct business using the word "Pimentel." There is nothing permissive about the permanent injunction clause. It would not be logical to interpret paragraph 5's "as permitted by paragraph 1" to refer to the permanent injunction clause, rather than to the permissive use clause.

Second, Hector Pimentel's testimony at the evidentiary hearing supports the Court's construction of the 1989 Injunction. Hector testified that it was his understanding that the 1989 Injunction required him to put a disclaimer every time he used the word "Pimentel." Transcript of Hearing at 139:7-14 (January 21, 2005)(Hector Pimentel).

Pimentel Guitar Makers has shown that the Defendants' actions individually and/or in combination, violate the 1989 Injunction. Hector Pimentel has violated the Injunction by conducting business under a name, trademark, or tradename that contains the word "Pimentel," without providing a disclaimer of association with the Plaintiff.

Additionally, Danette I.L. Hinkle Pimentel, and Danette I. Lovato - Pimentel Music

-14-

Enterprises, Inc., have violated the 1989 Injunction inasmuch as they have conducted business under a name, trademark, or tradename that contains the word "Pimentel," to the extent that they have promoted the business efforts of Hector Pimentel without providing a disclaimer of association. Specifically, the advertisement on Central Avenue, the advertisement in the QwestDex yellow pages, and Hector Pimentel's website all violate the 1989 Injunction.  The Defendants have not provided a disclaimer of association with Pimentel Guitar Makers for any of these uses of the word "Pimentel." If Hector Pimentel elects to use the word "Pimentel" in conducting business, he must also provide a disclaimer.  Additionally, Hector Pimentel's website refers to Hector Pimentel's tradename, "Hector Pimental Music Guitarist."  <u>See</u> Hector Pimentel, [http://www.hectorpimentel.com](http://www.hectorpimentel.com) web page.  The use of the word "Pimentel," used to conduct business, is a violation of the 1989 Injunction, as there is not a disclaimer of association.

Pimentel Guitar Makers argues that Hector Pimentel has violated the 1989 Injunction by advertising his name "Hector Pimentel" on his website with the word "guitar" in close proximity.  <u>See</u> Plaintiff's Motion for Preliminary Injunction at 6.  The 1989 Injunction only enjoins the use of the word "guitar" when combined in a tradename or trademark that includes the word "Pimentel."  The 1989 Injunction does not enjoin Hector Pimentel from merely using the word "guitar" in close proximity to the use of the word "Pimentel" in a tradename, where the word "guitar" is not part of the tradename.  For example, in describing what he does, Hector can say that he plays the guitar.  On Hector's website, the word "guitar" appears under, and in close proximity to, the name "Hector Pimentel."  <u>See</u> Hector Pimentel, [http://www.hectorpimentel.com](http://www.hectorpimentel.com) web page.  The placement of the word "guitar" in close proximity to the name "Hector Pimentel" is not a violation of the 1989 Injunction.  Hector Pimentel is not enjoined by the 1989 Injunction from merely using the word

-15-

"guitar", rather, he is enjoined from using the word "guitar" as part of a tradename or trademark that includes the word "Pimentel" in conducting business.

Because the Court finds that the Defendants have violated the 1989 Injunction and that an injunction based on this violation affords Pimentel Guitar Makers sufficient protection at this time, the Court need not address the Federal Lanham Act, nor the New Mexico Unfair Practices Act, for preliminary injunction purposes.

### B.    IRREPARABLE INJURY WILL RESULT IF THE COURT DOES NOT GRANT THE PRELIMINARY INJUNCTION.

There is a substantial likelihood of confusion in this case, and thus, Pimentel Guitar Makers will incur irreparable injury if the Court does not grant the injunction.  First, actual confusion has occurred.  See generally Affidavit of Felicia Trujillo (executed October 27, 2004); Jessica Herrera Aff.; Veronica Becker Aff.[3]  Second, the marks of Pimentel Guitar Makers and of the Defendants are similar.  Pimentel Guitar Makers and Defendants use the word "Pimentel" in conducting business. Third, the word "Pimentel" is used by Plaintiff and Defendants in the music industry - - specifically in relation to guitars and guitar music.  And, finally, the Pimentel mark is strong.  Although consumers are likely to use more care in making expensive purchases, the factors looked at as a whole, see Heartsprings, Inc. v. Heartsprings, Inc., 143 F.3d at 554, show likelihood of confusion,

---

[3]  The Defendants alleged in their Counterclaim that actual confusion had occurred, see Defendants' Counterclaim, filed November 23, 2005 ¶¶100-101, at 16 (Doc. 31); however, the Defendants argued at the evidentiary hearing that the confusion pled in the Counterclaim referred only to the public confusing Pimentel Guitar Makers with the Defendants and not that the public was confusing the Defendants with Pimentel Guitar Makers, and that the Defendants therefore, had not admitted that Pimentel Guitar Makers had established confusion as part of Pimentel Guitar Makers' case for preliminary injunction.  The Court need not decide whether this distinction has merit, as Pimentel Guitar Makers has shown actual confusion and likelihood of confusion independent of the Defendants' Complaint.

and thus establish a presumption of irreparable harm.

The Defendants contend that trademarks which are based on surnames are afforded only minimal protection as descriptive marks and are therefore inherently weak.  See Defendants' Response to Plaintiff's Motion for Preliminary Injunction at 8.  Defendant cites to Brennan's Inc. v. Brennan's Rest. LLC, 360 F.3d 125, 131 (2nd Cir. 2004), as support for this proposition.  Although Brennan's cautions that "courts generally are hesitant to afford strong protection to proper names, since to do so preempts others with the same name from trading on their own reputation," id. 360 F.3d at 131, the Brennan's Court does affirm that even a common name will be afforded protection when it achieves distinctiveness in the marketplace, see id. 360 F.3d at 132.  The Tenth Circuit parallels this holding with a requirement that a "secondary meaning" be shown to view a surname as a "strong" mark.  Marker Int'l v. DeBruler, 844 F.2d 763, 764 (10th Cir. 1988).  Determining whether a mark has developed a secondary meaning is a question of fact, and requires a finding that, because of an association with a particular product or firm over an extended period of time, the public has come to identify that particular product with a particular name.  See id. 844 F.2d at 764.  Such is the case here.  The public has identified "Pimentel" with guitars.  See Kathryn M. Cordova, New Mexico's Hector Pimentel, Hispanic, January/February at 84; Hector Pimentel, Passion Plays Guitar, Facets (The Spencer Circle, Alto, New Mexico), September 1999, at 1.  And, even if the "Pimentel" mark is not a strong mark, and thus, not due the protection given to other strong marks, the Court is not basing its "protection" on whether "Pimentel" is a strong mark, but rather, the Court is basing its ruling on the alleged violation of the 1989 Injunction.  Thus, the Defendants' contention that "Pimentel" as a surname is not entitled to protection because it is an inherently weak mark is not a controlling argument.

The Defendants also contend that there is no presumption of irreparable injury in this case because the Plaintiff delayed in seeking relief. See Defendants' Response at 19. In GTE Corp., the court denied equitable relief when the plaintiffs had been aware of the defendant's use of a similar mark for eight years before seeking an injunction. See GTE Corp. v. Williams, 731 F.2d at 679. The court in GTE Corp. noted that the plaintiffs did not display any degree of urgency, and that any injury further inflicted in the interim period before a trial on the merits would not "materially aggravat[e]" the situation already created. Id.

Although Pimentel Guitar Makers delayed in filing a complaint and in seeking injunctive relief, it had good cause to delay. Pimentel Guitar Makers was aware that Hector Pimentel was violating the 1989 Injunction by using the word "Pimentel" without providing a disclaimer of association while he was working for Pimentel Guitar Makers; however, he was using the "Pimentel" name with the Pimentel Guitar Makers' permission for the benefit of Pimentel Guitar Makers. See Ricardo Pimentel Aff., ¶¶ 2, 4, 5, 6, at 2-3; Roberto Pimentel Aff., ¶¶ 2, 4, 5, 6, at 2-3. Pimentel Guitar Makers had no reason at that time to bring a claim or to seek injunctive relief until they discovered that the Defendants were advertising with the word "Pimentel" in the QwestDex yellow pages in 2004 -- not for the benefit of Pimentel Guitar Makers and without a disclaimer of association. See Ricardo Pimentel Aff., ¶ 7, at 3; Roberto Pimentel Aff., ¶ 7, at 3.

Pimentel Guitar Makers also had good cause to delay bringing injunctive relief after the Complaint was filed. Pimentel Guitar Makers and the Defendants entered into settlement negotiations and held a settlement conference in front of the Honorable Richard L. Puglisi, United States Magistrate Judge for the District of New Mexico. In August 2004, Judge Puglisi believed that the case had been settled. See Notice of Settlement Conference (Doc. 22). The case did not settle,

-18-

negotiations broke down, and Pimentel Guitar Makers requested that all deadlines be reset.  See Plaintiff Motion to Extend Scheduling Deadlines (Doc. 23).  Again, until settlement negotiations broke down at the end of August, see Defendants' Surreply at 10,  Pimentel Guitar Makers had no reason to seek injunctive relief.  They had good reason to believe that the case would settle.  Pimentel Guitar Makers delayed only two months in seeking injunctive relief after settlement negotiations broke down.  See id.  The delay in GTE Corp., where the Tenth Circuit held that the delay undercut the presumption of irreparable injury, was eight years.  See GTE Corp. v. Williams, 731 F.2d at 679.  The Plaintiff's two month delay was not long enough to undercut the presumption of irreparable injury.

The Defendants additionally argue that the Court should not grant a preliminary injunction based on the defense of laches.  To bar an action based on the defense of laches, the Court must find: (i) unreasonable delay in bringing suit; and (ii) prejudice to the party asserting the defense.  See Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1338 (10th Cir. 1982)(citations omitted).  As discussed supra, Pimentel Guitar Makers was not unreasonable in its delay, and thus the defense of laches does not bar this action.

The Court finds that the 1989 Injunction is more in the nature of a consent decree or contractual relationship that has remained intact since the 1989 Order.  The Court finds that Pimentel Guitar Makers did not disavow, or in any way give up, its rights under the 1989 Injunction, by affiliating with Hector Pimentel from 1991 to 2004, and by not requiring Hector to provide disclaimer of association as per the 1989 Injunction during that period of time.  Pimentel Guitar Makers had no reason to require a disclaimer of association at that time, because it was promoting its own company through Hector Pimentel as well as through other employees.  Once the affiliation between Hector

Pimentel and Pimentel Guitar Makers ended, Pimentel Guitar Makers retained its rights under the 1989 Injunction.

## C.   THE THREATENED INJURY TO PIMENTEL GUITAR MAKERS OUTWEIGHS WHATEVER DAMAGE THE PROPOSED INJUNCTION WOULD CAUSE TO THE DEFENDANTS.

Pimentel Guitar Makers argues that the Defendants' use of the Pimentel name threatens the reputation of Pimentel Guitar Makers' business, and without that reputation, Pimentel Guitar Makers' "business would have little or no value."  Plaintiff's Brief In Support of Plaintiff's Motion for Preliminary Injunction at 10.  The Defendants argue that granting a preliminary injunction would cause significant injury to its business interests, thereby disrupting the status quo.  See Defendants' Response at 19-20.  The Defendants argue that an injunction would: (i) force the Defendants to lose the benefits of substantial marketing efforts; (ii) compel the Defendants to abandon common law and New Mexico state trademark rights; (iii) cause the Defendants' customers to question the stability and quality of Defendants' operations; and (iv) impose significant costs in order for the Defendants to alter the nature of their advertising in a short amount of time.  See id.  The Defendants further contend that denial of any injunction will preserve the status quo and that Hector Pimentel's performance and instruction activities may even benefit the Pimentel Guitar Makers' business interests by bestowing good will on its guitar manufacturing activities.  See id.

The Court finds that granting the injunction will preserve the status quo from the 1989 Injunction.  The status quo from the 1989 Injunction is that Hector Pimentel is not allowed to conduct business under a name, d/b/a, trademark or tradename that contains the word "Pimentel," without providing a disclaimer of association, and is not allowed to include "in any such name the words 'guitar' or 'luthier.'"  Pimentel Order and Judgment, ¶¶ 1-2, at 1-2.  The injunction granted

here will preserve that status quo by requiring the same thing.  If the Court grants the preliminary injunction, the Defendants can still use the word "Pimentel" to conduct and promote Hector Pimentel's business, as long as they provide a disclaimer of association with Pimentel & Sons, Guitar Makers.  The Defendants will still be able to benefit from Hector Pimentel's good will under the injunction, and the resulting harm will be the minimal added cost of including the disclaimer.

The harm to Pimentel Guitar Makers heavily outweighs whatever damage the proposed injunction would cause the Defendants if the injunction is granted.  Pimentel Guitar Makers' reputation and goodwill is at stake, and the status quo will be maintained.  In addition, the burden on the Defendants is minimal.

**D.    ISSUANCE OF AN INJUNCTION WOULD NOT DISSERVE THE PUBLIC INTEREST**.

Serving the public interest in a trademark case can be defined as the right of the public not to be deceived or confused.  See Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d at 197.  The Defendants' brief does not contest this principle, but rather argues that there is no public confusion, and even if there were public confusion, it is in the context of guitar performance, a market in which the Pimentel Guitar Makers does not participate.  See Defendants' Reply at 20. Pimentel Guitar Makers contends that the Defendants' actions individually and/or in combination confuse the public as to the source of origin of the various Defendants' goods and services, and capitalize on the goodwill of Pimentel & Sons.  See Plaintiff's Brief in Support of Motion for Preliminary Injunction at 7.  Pimentel Guitar Makers argues that these activities cause actual confusion, mistake, and deception among consumers.  See id.

As discussed previously, actual confusion has occurred, and there is a likelihood that

confusion will occur if the Court does not issue an injunction.  The same reasoning that was applied to find that there is a likelihood of confusion and thus a presumption of irreparable harm also applies to the public interest test.  Because members of the public have been confused, and there is a likelihood that confusion will occur in the future, the public interest will be served by issuing an injunction.

**E.   THE INJUNCTION APPLIES TO DANETTE PIMENTEL AND TO DANETTE I. LOVATO - PIMENTEL MUSIC ENTERPRISES, INC., IN THEIR EFFORTS TO PROMOTE HECTOR PIMENTEL'S BUSINESS.**

The Court does not have the power to put a blanket enforcement arising from the 1989 Injunction on Danette Pimentel as she was not a party to the 1989 Injunction; however, the Court does have the power to enjoin Hector Pimentel, Danette Pimentel, and the corporation from violating the 1989 Injunction through the efforts of Danette Pimentel and the corporation.  See International Brotherhood of Teamsters v. Keystone Freight Lines, Inc., 123 F.2d 326, 329 (10th Cir. 1941)("It is true that persons not technically agents or employees may be specifically enjoined from knowingly aiding a defendant in performing a prohibited act if their relation is that of associate or confederate. Since such persons are legally identified with the defendant and privy to his contempt, the provision merely makes explicit as to them that which the law already implies.")(quoting Chase Nat'l Bank v. Norwalk, 291 U.S. 431, 436-37 (1934)).  "An injunctive decree may bind not only the parties defendant but also those who are represented by them or are subject to their control or in privity with them.  To hold otherwise would enable a defendant to nullify the decree by carrying out the prohibited acts through its servants, agents, employees or those identified with it."  International Brotherhood of Teamsters v. Keystone Freight Lines, Inc., 123 F.2d at 329 (citations omitted). Hector Pimentel is not allowed to do, through Dannette Pimentel or the corporation, what he himself

is enjoined from doing.  When Danette Pimentel and the corporation promote the business efforts of Hector Pimentel, their efforts clearly reside within the scope of the 1989 Injunction.

**IT IS ORDERED** that Defendants Hector Pimentel and Danette I. Lovato - Pimentel Music Enterprises, Inc., shall be preliminarily enjoined from conducting business under a name or tradename that contains the word "Pimentel" without printing a disclaimer of association with Pimentel & Sons, Guitar Makers.  Defendant Dannette I.L. Hinkle Pimentel is also preliminarily enjoined from including the word "Pimentel" in her name, when promoting or in conjunction with Hector Pimentel's business interests, without printing a disclaimer of association with Pimentel & Sons, Guitar Makers. When Danette Pimentel is doing work in her own name and not in promotion of or on behalf of Hector Pimentel, she is not enjoined by this preliminary injunction.  When Danette Pimentel  is individually promoting others and is not promoting Hector Pimentel nor the corporation, she is not enjoined by this preliminary injunction.

Specifically, Defendant Hector Pimentel must print a disclaimer of association on his website, and in all of his future advertisements, and any other time he conducts business under a name or tradename that contains the word "Pimentel."   Defendant Danette I. Lovato - Pimentel Music Enterprises, Inc., must print a disclaimer of association in its future advertisements any time it promotes or conducts Hector Pimentel's business under a name or tradename that contains the word "Pimentel."   Danette Pimentel is required to print a disclaimer of association in all future advertisements when she is promoting or conducting the business efforts of Hector Pimentel.  The Defendants are not required to alter the current yellow pages advertisements that have already been printed.  All future yellow pages advertisements, that include the word "Pimentel" however, must contain a disclaimer.  The Defendants must remedy all other violations within 30 days from the date

of this Order.  Hector Pimentel is not preliminarily enjoined from having the word "guitar" in close

proximity to his name, so long as the words "guitar" and "luthier" are not used in conducting business

as part of a name, d/b/a, tradename, or trademark including the word "Pimentel."

Pursuant to rule 65(c) of the Federal Rules of Civil Procedure, Pimentel Guitar Makers are

hereby ordered to post a bond in the amount of $10,000.

_____

UNITED STATES DISTRICT JUDGE

*Counsel*:

Dennis F. Armijo
Albuquerque,  New Mexico

Judd C. West
Robert M Doughty, III
Doughty & West PA,
Albuquerque, New Mexico

Michael W. Wile
Bingham, Hurst, Apodaca & Wile, PC
Albuquerque, New Mexico

Justin R. Baer
Hatch, Allen & Shepherd, P.A.
Albuquerque, New Mexico

*Attorneys for Plaintiff/Counter-Defendant Pimentel & Sons Guitar Makers, Inc. , Third Party Defendant Ricardo Pimentel, Third-Party Defendant Roberto Pimentel, and Third-Party Defendant Lorenzo Pimentel.*

Jerry A. Walz
Walz & Associates
Cedar Crest,  New Mexico

*Attorney for the Defendant/Counter-Claimant/Third-Party Plaintiff Hector Pimentel*

-24-

Kevin L. Wildenstein
Southwest Intellectual Property Services, LLC,
Albuquerque, New Mexico 87109

      *Attorney for the Defendants/Counter-Claimants Danette I.L. Hinkle Pimentel and Danette I. Lovato-Pimentel Music Enterprises, Inc.*