IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

PIMENTEL & SONS GUITAR MAKERS,
INC., a New Mexico corporation,

   Plaintiff,

v.              No. CIV 04-360 BB/RLP

DANETTE I.L. HINKLE PIMENTEL, an
individual, and DANETTE I. LOVATO-
PIMENTEL MUSIC ENTERPRISES,
INC., a New Mexico corporation,

   Defendants.

COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW

THIS MATTER came on for a bench trial on April 24 and 25, 2007, and having considered all the evidence; arguments of counsel; memoranda of law; and the submitted proposed findings of fact and conclusions of law, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

### *Findings of Fact*

1. This is the latest manifestation of a long simmering, family feud, projected into a dispute over the legal use of the family name in the music business.

2. Lorenzo Pimentel came to New Mexico in the 1950s and began to make handcrafted guitars as he had in El Paso. He also often played the guitars to demonstrate their quality and sound.

3.      Plaintiff, Pimentel & Sons Guitar Makers, Inc. ("Pimentel & Sons"), is a New Mexico corporation that started doing business in Albuquerque in 1963.  It opened a guitar instruction studio called "Pimentel Music" in 1963, where guitar manufacturing and repair services were also provided.

4.      Pimentel & Sons obtained and currently owns federal Registration No. 1,623, 560 for the trademark "Pimentel," registered on November 20, 1990, with a first date of use in commerce in 1963.  Pimentel & Sons' federal trademark covers "handcrafted guitar manufacture" and "guitar repair."

5.      Since 1963, Pimentel & Sons has continuously provided guitar manufacturing, guitar repair, music instruction, and guitar demonstration musical performances.

6.      Pimentel & Sons has continuously created and displayed banners bearing the name "Pimentel Music" at trade shows and festivals throughout the United States starting in the early 1980s.

7.      In 1978, Pimentel & Sons opened a second studio for guitar instruction, also under the name "Pimentel Music."

8.      Beginning in 1982, Pimentel & Sons distributed flyers to the public advertising music instruction at "Pimentel Music" studio.

9.      In 1991, Rick Pimentel started the New Mexico Guitar Society which operates out of Pimentel Music, and promotes Plaintiff's products at various performances.

10.     Over the years, Mel Bay Publications printed music instruction books that featured pictures of Pimentel guitars with the words "Pimentel & Sons Music."

11.     In 1986, Hector Pimentel ("Hector") became estranged from the Pimentel family and a lawsuit over the use of the Pimentel name ensued.  In 1989, following a hearing, U.S. District Judge Juan G. Burciaga entered a permanent injunction which prohibited Hector Pimentel from conducting business using Pimentel in connection with making or manufacturing guitars and if he used the "Pimentel" name at all, he was required to print a disclaimer indicating his business is not and never has been "affiliated with Pimentel and Sons, Guitar Makers."  In every place Hector did business, the Burciaga Injunction required he place a sign, "We are not affiliated in any way with Pimentel and Sons, Guitar Makers."

12.     By 1997, Hector was reunited into the Pimentel family and was giving guitar lessons at Pimentel Music.

13.     Defendant Danette I. Lovato Hinkle ("Danette") married Hector in 1995.  Danette began to use her married name, Danette Lovato Pimentel, to promote musical performances, especially Hector's.

14.     From about 1995 through August 2003, Danette assisted Hector in promoting his business named "Pimentel Music Enterprises, Hector Pimentel" in the entertainment business.

15.     Danette obtained an Albuquerque business license for "Pimentel Music Enterprises" in 1994.  Danette also obtained the State of New Mexico trade name registration for "Pimentel Music Enterprise, Hector Pimentel" on March 5, 1996.  This registration covered "musical performances, solo or group; guitar musical productions, events, concerts, festivals, music sales, recordings, and promotions; and, guitar instruction."

16.     Danette used "Pimentel Entertainment" on credit cards and bank accounts dating back to 1994.

17.     Defendants obtained a certificate of incorporation from the New Mexico Public Regulation Commission, Defendants' corporation bearing the trade name "Hector Pimentel Music Enterprises, Inc.," on December 7, 2000.

18.     Danette and Defendant, Danette I. Lovato-Pimentel Music Enterprises, Inc. ("DLPME"), promoted a number of artists, along with Hector, with a focus on the arts and the culture of New Mexico.

19.     In August 2003, Hector divorced Danette.

20.     As part of the original divorce settlement, Hector and Danette agreed she was prohibited from using the name "Hector Pimentel" in any business ventures.

21.     However, since Danette continued to conduct business on behalf of Hector, on February 25, 2004, Hector and Danette amended their divorce decree to strike the provision that prohibited Danette from using the name "Hector Pimentel Music Enterprises, Inc.," for business purposes.

22.     Plaintiff filed this suit to enforce its federal trademark and the 1989 Injunction.

23.     The case was originally assigned to Judge James O. Browning who also granted Plaintiff a Preliminary Injunction [doc. 124].

24.     After a full evidentiary hearing, Judge James O. Browning concluded that, "Hector Pimentel continues to infringe upon Pimentel Guitar Makers' trademarks regularly without adherence the 1989 Injunction and without heed to requests from Pimentel Guitar Makers that he cease infringing their trademarks."   (Mem. Op. p. 11).

4

Moreover, he found: "Danette I.L. Pimentel, and Danette I. Lovato-Pimentel Music Enterprises, Inc., have violated the 1989 Injunction inasmuch as they have conducted business under a name, trademark, or tradename that contains the word 'Pimentel,' to the extent that they have promoted the business efforts of Hector Pimentel without providing a disclaimer of association." (Mem. Op. pp. 14-15). "When Danette Pimentel is doing work in her own name and not in promotion of or on behalf of Hector Pimentel, she is not enjoined by this preliminary injunction.  When Danette Pimentel is individually promoting others and is not promoting Hector Pimentel nor the corporation, she is not enjoined by this preliminary injunction."  (Mem. Op. p. 23).

25.     Danette and DLPME have been and continue to be active participants in organizations which promote and market to the entertainment, hospitality and tourism industries in New Mexico and elsewhere.

26.     Danette and DLPME have never offered "handcrafted guitars" or "guitar repair services."

27.     After settling his claims in this suit with Pimentel & Sons, Hector again withdrew his permission to allow Danette to use the "Hector Pimentel" name.  He assigned "any and all interests he has for 'Pimentel Music' to Plaintiff.  In return, Pimentel & Sons granted Hector a license to use "Hector Pimentel Music Enterprises."

28.     Danette and DLPME are using the same tradename, "Pimentel Music," to advertise in the same or overlapping geographic area where that Pimentel & Sons has continuously and currently employs that name.

5

29.     Danette has used Danette Lovato Pimentel Music Enterprises to promote musical entertainment and promote tourism and hospitality for New Mexico.  There is no evidence Danette or DLPME used these names with malice or in bad faith.

30.     The public in New Mexico and the Southwestern United States has come to associate the tradename Pimentel Music with handcrafted guitars, guitar repair, guitar instruction, concerts, and contests.

31.     There is very limited evidence of public confusion and only as it relates to guitar instruction, concerts, and contests.

### *Conclusions of Law*

1.      The Court has subject matter jurisdiction and personal jurisdiction over this action and the parties.  15 U.S.C. § § 1121.

2.      Pimentel & Sons owns the legal right to the trademarks "Pimentel" and "Pimentel Music" based on its first use and adoption of the same in 1963.

3.      A federal registration creates a presumption the mark is distinctive.  *GTE Corp. v. Williams*, 904 F.2d 536, 538 (10th Cir. 1990).

4.      The general rule is that, as between conflicting claimants, priority of appropriation determines the right to the mark.  *Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 430 (10th Cir. 1975); *also see United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100 (1918).

5.      The elements of a trademark infringement action are: (1) valid trademark; (2) mark is used by Plaintiff; and (3) proof Defendants' use of the mark is or is likely to cause confusion concerning origins of goods or services.  *Donchez v. Coors Brewing Co.*, 392

6

F.3d 1211 (10th Cir. 2004) (Colorado common law); *Scott Fetzer Co. v. Gehring*, 288 F. Supp. 2d 696 (E.D. Pa. 2003) (Lanham Trade-Mark Act).

6.      Tradename protection is not accorded to a family surname until it acquires a secondary meaning. *Investacorp v. Arabian Investment Banking Corp.*, 931 F.2d 1519 (11th Cir. 1991); *Horlick's Malted Milk Corp. v. Horlick*, 143 F.2d 32 (7th Cir. 1944). The name Pimentel has acquired a secondary meaning only with respect to the manufacture, sale, repair, instruction on, and demonstration of guitars.

7.      Trademark rights protect against the use of a registered mark on both competing as well as related goods. *Team Tires Plus, Ltd. v. Team Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).

8.      The evidence persuades the Court that consumer confusion would be created if Defendants use any phrase including Pimentel with regard to guitar sales, guitar instruction or Spanish, classical or Flamenco guitar demonstrations or concerts. *See The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996).

9.      The stronger the mark the greater the likelihood of confusion. 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23.47 (1996 ed.). Plaintiff failed to present persuasive evidence of the Pimentel & Sons' mark's recognition or strength in the marketplace for musical events other than guitar manufacture, instruction, repair, concerts, and contests.

10.    When determining whether a likelihood of confusion exists between two marks, the court may consider the following non-exhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3)

evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.  These factors are interrelated and no one factor is dispositive.  *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

11.   The superficial similarity of name in related industries is normally insufficient to prove confusion.  *See Frosty Treats, Inc. v. Sony Computer Entertainment America, Inc.*, 426 F.3d 1001 (8th Cir. 2005); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992); *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 71 U.S.P.Q.2d 1026, 2003 WL 23109750 (S.D.N.Y. 2003), *aff'd* (unpublished), 412 F.3d 373 (2d Cir. 2005); *Bell v. Starbucks U.S. Brands Corp.*, 389 F. Supp. 2d 766 (S.D. Tex. 2005).  Plaintiff failed to introduce persuasive evidence that Defendants' use of her married name, Danette Lovato Pimentel or Danette I. Lovato Pimentel Music Enterprises, Inc., caused confusion with Plaintiff's trademark when Defendants used those names to stage and promote entertainment other than guitar performances.  *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

12.   Plaintiff also failed to produce persuasive evidence that Defendants' use of the shared family name, Pimentel, causes confusion in marketing dissimilar, if tangentially related, products such as rock, folk, country or other forms of musical entertainment by recognized performers unrelated to the Pimentel family.

13.   An injunction will be granted in favor of Plaintiff enjoining Defendants from the use of the names Pimentel, Pimentel Music, Hector Pimentel Music Enterprises or any similar phrase as it relates to the sale, manufacture, repair, instruction on or

demonstration of guitars including concerts or contests.  The "marks" Danette Lovato Pimentel or Danette I. Lovato-Pimentel Music Enterprises, Inc., are not, however, similar enough to evoke confusion in areas where Pimentel & Sons has not acquired secondary meanings such as the promotion of musical entertainment or musicians other than Hector Pimentel.

14.   Judgment will be granted in favor of Pimentel & Sons on Danette and DLPME's counterclaim for common law service mark infringement.  Danette and DLPME's counterclaim will be dismissed with prejudice.

15.   Proof of actual confusion is ordinarily necessary to sustain an award of damages. *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996).  Plaintiff failed to establish actual damages.  *Id.*

16.   When a trademark infringement is malicious, fraudulent or deliberate, a court may award attorney's fees.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000); *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982).  Plaintiff introduced no persuasive evidence to support such a conclusion here.


All tendered findings and conclusions not incorporated herein are deemed Denied.

A Judgment consistent with these findings of fact and conclusions of law should be drawn up by counsel for Plaintiff and presented to the Court within twenty (20) days.

**DATED this 15th day of June, 2006.**


BRUCE D. BLACK
United States District Judge